IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN JOHN PALMER,

    Petitioner,

v.                                            Civil Action No. 3:08cv006-HEH

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2254 Petition)

Steven John Palmer ("Petitioner"), a Virginia inmate proceeding through counsel, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the revocation of his 252-month suspended sentence by the Circuit Court for the City of Norfolk ("Circuit Court"). Respondent filed a motion to dismiss, and Petitioner filed a timely response. Accordingly, the matter is ripe for consideration.

### I. PROCEDURAL HISTORY

#### A. Prior Criminal Proceedings

On February 25, 2003, Petitioner pled guilty to one felony count of Unauthorized Use of a Motor Vehicle and two felony counts of Abduction. The victims of the abduction were Petitioner's ex-wife, Carolyn Palmer, and her son. As recommended in the plea agreement, the Circuit Court sentenced Petitioner to a total sentence of 13 years. The Circuit Court, however, agreed to suspend the 13-year sentence on the condition that Petitioner maintain good behavior, have no contact with the victims, and return to

Indiana, where his relatives lived and where Petitioner had indicated his desire to return. After receiving the suspended 13-year sentence, Petitioner immediately was released from jail. Soon thereafter, Ms. Palmer began receiving threatening voicemails from Petitioner at her workplace, *The Virginian-Pilot*.[1] Petitioner also began leaving threatening voicemails for Ms. Palmer's co-workers. On April 4, 2003, the Circuit Court issued a capias because these phone calls violated the conditional terms of the suspended 13-year sentence.[2]

### B. Imposition Of A 252-Month Suspended Sentence

In addition to moving for the revocation of Petitioner's suspended 13-year sentence, the Commonwealth also charged Petitioner with twenty (20) misdemeanor counts of Using Threatening or Indecent Language Over the Telephone and three (3) misdemeanor counts of Stalking. On October 2, 2003, Petitioner pled guilty to all twenty-three (23) misdemeanor counts pursuant to a plea agreement that was conditioned on Petitioner having "no contact with [Ms. Palmer] or her family; No contact with Landmark Communications or its holdings; (Contact to mean direct, indirect, third party contact, for any reason at any time)." (Oct. 2, 2003 Plea Agreement ¶ 3.) On October 20, 2003,

---

[1] *The Virginian-Pilot* is a subsidiary of Landmark Communications and was also referred to as "Landmark Communications" by the Circuit Court.

[2] On October 10, 2003, the Circuit Court found that, in making phone calls to Ms. Palmer's co-workers, Petitioner had also violated the conditional terms of his previous 13-year suspended sentence and imposed the full 13 years of imprisonment. That revocation proceeding and the re-institution of that sentence are not at issue here.

pursuant to the plea agreement, the Circuit Court sentenced Petitioner to 276 months of imprisonment and suspended 252 months of that sentence on the condition that Petitioner have "no contact whatsoever with [Ms. Palmer], [her] Family, or with Landmark Communications, or its holdings, directly, indirectly or through 3rd party." (Oct. 20, 2003 Sent'g Order.) This resulted in a total active sentence of 24 months.

Shortly after the Court imposed this sentence, Petitioner again began calling Ms. Palmer's co-workers, and also called Ms. Palmer's former husband and step-daughter. These phone calls were made between November 15, 2003, and December 3, 2003. At that time, Petitioner was in jail.[3] On April 30, 2004, Petitioner appeared for a revocation hearing on the 252-month suspended sentence. At that hearing, counsel for Petitioner requested that the Circuit Court judge who had presided over the previous proceedings, Judge Poston, recuse himself. Judge Poston responded: "That's no problem. We'll transfer the matter to be heard by Judge Griffith." (Apr. 20, 2004 Hr'g Tr. 2.)

## C. Revocation Hearing Concerning The 252-Month Suspended Sentence

On November 4, 2004, Petitioner appeared before Judge Griffith for a revocation hearing pertaining to the 252-month suspended sentence imposed on October 20, 2003. At the hearing, two of Ms. Palmer's co-workers, Ms. Warring and Ms. Kohlmeyer, testified that Petitioner continued to leave threatening voicemail messages after

---

[3] Petitioner was serving the 24-month portion of his sentence that had been imposed on October 20, 2003.

October 20, 2003. Specifically, they testified that on December 5, 2003, Petitioner had left a threatening message on Ms. Kohlmeyer's voicemail at *The Virginian-Pilot*, which Ms. Kohlmeyer had then forwarded to Ms. Warring, the personnel manager, for review by Ms. Warring and the security department. After counsel objected to Ms. Warring's ability to identify Petitioner's voice and requested voir dire, the Commonwealth subjected Ms. Warring to a lengthy examination as to how she could identify Petitioner's voice. (Nov. 4, 2004 Revoc. Hr'g Tr. 11-22.) Ms. Warring explained that Petitioner had left her at least twenty threatening messages in the past and that, per company policy, she had previously been forwarded hundreds of messages that Petitioner left for other Landmark Communications employees. (Nov. 4, 2004 Revoc. Hr'g Tr. 18.) Ms. Warring testified that she was well acquainted with Petitioner's voice, that Petitioner had previously pled guilty to leaving her messages,[4] and that there was "[n]o doubt" in her mind that it was Petitioner who left Ms. Kohlmeyer the message on December 5, 2003, wherein he threatened Ms. Kohlmeyer as well as Ms. Palmer. (Nov. 4, 2004 Revoc. Hr'g at 14.)

Ms. Kohlmeyer then testified to receiving the voicemail message from Petitioner on December 5, 2003. Ms. Kohlmeyer explained that she recognized Petitioner's voice because she had met him in person and received numerous threatening voicemails from Petitioner in the past. Through the testimony of the custodian of telephone records at the

---

[4] Petitioner's previous messages to his ex-wife's co-workers at *The Virginian-Pilot* partially comprised the 23-count indictment to which he pled guilty in October 2003.

prison, the Commonwealth also submitted telephone records from November 15, 2003, to November 23, 2003, into evidence. These records demonstrated that telephone calls were made *after* October 20, 2003, from Petitioner's unit at the jail to Ms. Kohlmeyer's direct extension at *The Virginian-Pilot*, to *The Virginian-Pilot*'s main number, as well as to Ms. Palmer's former husband. Although counsel argued that someone else at the prison could have made these calls, the prison telephone records indicated that, between making calls to Ms. Palmer's former husband and to Ms. Kohlmeyer, calls from that same prison phone were placed to Petitioner's mother.

The Commonwealth also introduced a letter of solicitation (hereinafter "solicitation letter") that Petitioner had written asking someone for assistance in tracking down Ms. Palmer's new location. The solicitation letter had been turned over to a police investigator. Over objection by defense counsel, the investigator testified that he could identify the handwriting on the solicitation letter as belonging to Petitioner because of the prior written statements he had taken from Petitioner.

At the conclusion of the revocation hearing, the judge determined he did not need to consider the evidence indicating that Petitioner initiated dozens of phone calls to Ms. Palmer's former husband and stepdaughter and made numerous phone calls to employees of Landmark Communications, which had all purportedly occurred *after* the October 20, 2003, suspended 252-month sentence. The judge ruled that Petitioner's guilt could rest solely on the one phone call Petitioner made to Ms. Kohlmeyer on December 5,

2003. Accordingly, the judge ordered that all 252 months of the suspended sentence be served. A final revocation and sentencing order was entered on November 9, 2004. Petitioner appealed the revocation and sentencing order to the Supreme Court of Virginia, which refused his appeal. Petitioner also filed a habeas petition, which that court denied.

On December 26, 2007, Petitioner filed this federal habeas petition claiming that he was denied his right to the effective assistance of counsel and due process because:

| | |
|---|---|
| Claim 1: | Revocation counsel failed to object that, in recusing himself and *sua sponte* appointing another judge in the same court to take over the case, Judge Poston did not comply with Virginia Code §§ 19.2-153 and 17.1-105(B), which require that a judge who recuses himself certify that fact to the Chief Justice of the Supreme Court of Virginia who will then appoint a replacement. |
| Claim 2: | Revocation counsel failed to object when the Commonwealth's witnesses (his ex-wife's co-workers) testified to their opinion that it was Petitioner's voice on the voicemail messages he left them without providing a proper foundation for the testimony. |
| Claim 3: | Revocation counsel failed to object : <br>(A) to the admissibility of evidence and testimony concerning the telephone calls Petitioner made to his ex-wife's former husband and step-daughter because they were not her "family members"; and <br>(B) that the Commonwealth did not demonstrate that the solicitation letter was sent *after* the Circuit Court imposed the suspended 252-month sentence on October 20, 2003. |
| Claim 4: | Revocation counsel did not argue that the Commonwealth's failure to produce video surveillance or present prison guards to testify that Petitioner was the inmate using the phone, at the time the threatening phone calls were made to Ms. Palmer's family members and co-workers, created an inference that such evidence would have been adverse to the Commonwealth. |

## II. CONSTITUTIONAL RIGHTS AT A REVOCATION HEARING

A claim for ineffective assistance of counsel is tenable only when there is an underlying Sixth Amendment[5] right to counsel. *Wainwright v. Torna,* 455 U.S. 586, 587–588 (1982). In *Gagnon v. Scarpelli,* 411 U.S. 778, 783–90 (1973), the United States Supreme Court held that the Constitution provides no general Sixth Amendment right to counsel in parole or probation revocation proceedings and adopted a case-by-case approach for determining whether counsel is constitutionally required. The Supreme Court further determined that when such a right exists in a given case, it arises under the Fourteenth Amendment's due process clause[6] and not the Sixth Amendment. *See id.* at 790.

Even if a constitutional right to counsel existed in the case at bar, Petitioner must first show that counsel's representation was deficient to demonstrate ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). The petitioner must then demonstrate that the deficient performance prejudiced the petitioner's defense. *Id.* The deficient performance facet of *Strickland* requires the petitioner to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran,* 273

---

[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. 14, § 1.

7

F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Lastly, in *Morrissey v. Brewer*, the Supreme Court held that, although the "full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations," a person is entitled to some due process before having his parole revoked. *Morrissey*, 408 U.S. 471, 480–81 (1972).[7] The Supreme Court further held that these due process rights include the right to "confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 489. However, the Supreme Court admonished that the revocation proceedings "should be flexible enough to consider evidence including letters, affidavits, and other materials that would not be admissible in an adversary criminal trial." *Id.*; *see also Gagnon*, 411 U.S. at 789 (discussing "the more limited due process right[s] of one who is a probationer" before their suspended sentence is revoked); *cf. Johnson v. United States*,

---

[7] In *Gagnon*, the Supreme Court noted that "revocation of probation where [a suspended] sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Gagnon*, 411 U.S. at 782 n.3.

8

529 U.S. 694, 700 (2000) (noting that hearings concerning the revocation of supervised release are informal proceedings in which the standard of proof is a preponderance standard, rather than the reasonable doubt standard common to all criminal proceedings).

### III. ANALYSIS

#### A. Claim 1

In Claim 1, Petitioner faults counsel for failing to object that Judge Poston did not comply with the Virginia Code when Judge Poston recused himself and appointed another judge in the same court, Judge Griffith, to take over the case. Specifically, Petitioner asserts that sections 17.1-105(B) and 19.2-153 of the Virginia Code mandate that a judge who recuses himself certify that fact to the Chief Justice of the Supreme Court of Virginia, and claims that it is the Chief Justice who then appoints a new judge. At the outset, the Court notes that, while section 17.1-105(B) provides that it is appropriate for the Chief Justice to designate a replacement judge "[i]f *all* the judges of [a] court" decide to recuse themselves, *see* Va. Code Ann. § 17.1-105(B) (2007) (emphasis added), section 17.1-105(A) permits a judge to "personal[ly] request" another "judge of any court of record" act as his or her replacement. Va. Code Ann. § 17.1-105(A). Nothing in the Court's limited record indicates that Judge Poston's appointment of a new judge to act as his replacement was inconsistent with Virginia's statutory rules.[8] Thus, Petitioner has

---

[8] Section 19.2-153 states:

> When the judge of a circuit court . . . is so situated in respect to the

not established that the failure to raise this argument constituted deficient performance.

Furthermore, while the Commonwealth of Virginia is free to enact statutes which provide more than the constitutionally mandated floor with respect to judicial bias issues, Petitioner cannot establish prejudice, *i.e.*, that the new judge who presided at his trial was biased against him, based on Petitioner's assertion that the appointment of the new judge did not comply with the Commonwealth's statutory rules. *See Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (explaining that although state statutes and various ethical standards generally prescribe rules regarding "a judge's qualifications to hear a case," due process only requires "a 'fair trial in a fair tribunal'" before a neutral decisionmaker (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). Because Petitioner has given this Court no reason to believe that the new judge who actually presided over his revocation proceeding, Judge Griffith, was biased against him, Petitioner cannot show prejudice. *See Bracy*, 520 U.S. at 904–06, 909; *Litekey v. United States*, 510 U.S. 540, 555–56 (1994).[9]

---

> case as in his opinion to render it improper that he should preside at the trial . . . he shall enter the fact of record and the clerk of the court shall at once certify this fact to the Chief Justice of the Supreme Court and thereupon another judge shall be appointed, in the manner prescribed by § 17.1-105, to preside at the trial.

Va. Code Ann. § 19.2-153. As just discussed, section 17.1-105(A) allows the judge who withdrew to "personal[ly] request" that another judge act as his or her replacement.

[9] To the extent Petitioner suggests that because Judge Griffith exhibited extrajudicial bias towards a different defense attorney in a drug distribution case involving an entirely different defendant, *i.e.*, in *Wilson v. Commonwealth*, 630 S.E.2d

Petitioner fails to demonstrate that a reasonable likelihood of a different outcome existed under *Strickland*. Accordingly, Claim 1 will be dismissed.

## B. Claim 2

In Claim 2, Petitioner faults counsel for failing to object when his ex-wife's co-workers, Ms. Warring and Ms. Kohlmeyer, testified to their opinion that Petitioner left the threatening message on Ms. Kohlmeyer's voicemail on December 5, 2003, because this "opinion evidence" lacked a proper foundation. (Hab. Pet. 37.) First, the record before the Court shows that counsel *did* object to Ms. Warring's testimony. (Nov. 4, 2004 Revoc. Hr'g Tr. 11-12.) Not only was counsel's objection and request for voir dire overruled, but it also resulted in the Commonwealth establishing the foundation for Ms. Warring's opinion by eliciting testimony as to how, in her role as personnel manager, Ms. Warring previously listened to the "several hundred" voicemail messages Petitioner left for various other employees at *The Virginian-Pilot*. Ms. Warring also testified about the twenty (20) threatening voicemails she had personally received from Petitioner on prior occasions. (Nov. 4, 2004 Revoc. Hr'g Tr. 12-14, 17-18.)

Second, when Ms. Kohlmeyer took the stand to testify, she provided a fulsome explanation as to how she could recognize Petitioner's voice on the December 5, 2003, voicemail message. (Nov. 4, 2004 Revoc. Hr'g Tr. 26-28.) Therefore, counsel could not

---

326, 331 (Va. 2006), then this Court should presume Judge Griffith exhibits extrajudicial bias in every case over which he presides, the Court refuses to make such a presumption.

object based on a lack of proper foundation. Furthermore, by the time Ms. Kohlmeyer testified, the contents of the December 5, 2003, message had already been revealed through Ms. Warring's testimony.

Lastly, even in a criminal trial in Virginia, "[a] lay witness may offer an opinion as to the identity of a person." C. Friend, 1-17 *The Law of Evid. in Va.* § 17-10 (6th ed. 2003); *Bowman v. Commonwealth*, 516 S.E.2d 705, 707 (Va. Ct. App. 1999); *see also Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364, 366 (1998) (stating that because a revocation proceeding is a "flexible, administrative" hearing, "traditional rules of evidence generally do not apply"). Here, Petitioner had already pled guilty to threatening Ms. Palmer over the telephone based, in part, on the voicemail messages he left her co-workers at *The Virginian-Pilot*. Having received his prior messages and calls, the co-workers were clearly able to recognize Petitioner's voice when he again began leaving threatening messages asking for Ms. Palmer's location.[10] The record further reflects that counsel vigorously cross-examined Ms. Warring and Ms. Kohlmeyer, that he lacked any basis to object to Ms. Kohlmeyer's identification of Petitioner's voice on the message, and that counsel's objection to Ms. Warring's opinion testimony about the same message had already been overruled. Petitioner fails to show either factually or legally that, had counsel objected that a proper foundation had not been laid for Ms. Kohlmeyer's

---

[10] As previously noted, prison phone records established that phone calls were made to Ms. Kohlmeyer and other employees at *The Virginian-Pilot* from Petitioner's pod in his unit at the jail. (Nov. 4, 2004 Revoc. Hr'g Tr. 79.)

testimony, it would have been sustained. Given the wide latitude accorded the Government in presenting evidence at a revocation hearing, *see Scott*, 524 U.S. at 366; *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972), counsel was not ineffective in failing to raise a groundless objection. *See Oken v. Corcoran*, 220 F.3d 259, 269 (4th Cir. 2000) (holding counsel was not ineffective for failing to make futile objection). Petitioner's conclusory allegations establish neither deficiency nor prejudice under *Strickland*. Claim 2 will be dismissed.

### C. Claim 3

In Claim 3(A), Petitioner faults counsel for failing to object to the admissibility of evidence and testimony concerning the telephone calls made to Ms. Palmer's former husband and step-daughter. Essentially, Petitioner is arguing that Ms. Palmer's former husband and stepdaughter were not her "family members," therefore, counsel should have argued that any telephone calls made to them did not violate the conditions of his suspended sentence. However, as the revocation court noted, the conditions of the October 20, 2003, suspended sentencing order prohibited Petitioner from having any contact with Ms. Palmer, whether it be direct, indirect, "or through a third party." (Nov. 4, 2004 Revoc. Hr'g Tr. 64; *see also* Oct. 20, 2003 Sent'g Order at 2.) Accordingly, under the terms of the suspended sentencing order, it did not matter whether Ms. Palmer's former husband and stepdaughter were considered her family members or third parties. Counsel wisely eschewed making such a technical argument in light of the

13

broad language of the October 20, 2003, Sentencing Order. Because Petitioner has not established either deficient performance or prejudice under *Strickland*, Claim 3(A) will be dismissed.

In Claim 3(B), Petitioner argues that counsel deficiently failed to object that the Commonwealth did not demonstrate that Petitioner mailed the solicitation letter after the Circuit Court imposed the October 20, 2003, suspended sentence. Petitioner cannot establish prejudice for two reasons. First, the Circuit Court conditioned the October 20, 2003, suspended sentence on Petitioner not contacting his ex-wife, her co-workers, her family members, or indirectly contacting her through third parties (Nov. 4, 2004 Revoc. Hr'g Tr. 64, 86), and the Commonwealth's evidence showed that Petitioner repeatedly called his ex-wife's co-workers, as well as her former husband and stepdaughter, after October 20, 2003. (Nov. 4, 2004 Revoc. Hr'g Tr. 77-80.) Thus, Petitioner cannot demonstrate that a reasonable likelihood of a different outcome existed if the solicitation letter had been excluded. Second, the revocation judge clearly recognized that the date when Petitioner sent the solicitation letter had not been proven by the Commonwealth (Nov. 4, 2004 Revoc. Hr'g Tr. 87), but held that "[u]ltimately, within that time frame, November 15th through December 5th, [the evidence presented] does culminate into *at least one* very specific [phone] call and that's all I need" to find a violation of the conditions of the suspended sentence. (Nov. 4, 2004 Revoc. Hr'g Tr. 89 (emphasis added).) Thus, the record before the Court demonstrates that the revocation judge

14

properly weighed and considered this evidence. Petitioner fails to provide clear and convincing evidence that the revocation judge's factual finding, that Petitioner violated the conditions of the October 20, 2003 suspended sentence, was incorrect. *See Wolfe v. Weisner*, 488 F.3d 234, 239 (4th Cir. 2007).

Because the revocation judge only needed to find that Petitioner left the December 5, 2003, phone message for Ms. Kohlmeyer, in order to determine that Petitioner violated the conditions of the October 20, 2003, suspended sentence, Petitioner cannot demonstrate that an objection to the admissibility of the solicitation letter would have changed the result of the proceeding. Petitioner therefore cannot show prejudice under *Strickland*. Claim 3(B) will be dismissed.

### D. Claim 4

In Claim 4, Petitioner faults counsel for not arguing that the Commonwealth's failure to produce video surveillance or present prison guards to testify that Petitioner used the prison phone at the time the threatening calls were made to Ms. Palmer's family and co-workers created an inference that such evidence would have been adverse to the Commonwealth's case. The record of the revocation hearing shows that counsel *did* in fact make this argument (Nov. 4, 2004 Revoc. Hr'g Tr. 81-82), but that the revocation court rejected it (Nov. 4, 2004 Revoc. Hr'g Tr. 88-89). Thus, Claim 4 will be dismissed.

## IV. CONCLUSION

In light of the foregoing, the petition for a writ of habeas corpus will be denied. Petitioner's request for an evidentiary hearing will be denied. Respondent's motion to dismiss will be granted, and the action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

Date: Aug 27 2008
Richmond, Virginia

/s/
Henry E. Hudson
United States District Judge